WESTERVELT et al. v. MAHONY et al.

(Supreme Court, Special Term, New York County. November 11, 1907.)

CONVERSION—WILLS—CONSTRUCTION—EQUITABLE CONVERSION.

A will giving the residue of the estate to the executors in trust, to invest the moneys and pay the income of the investment and of the "real estate" to testator's widow during her life, and, on her death to divide the residue, "real" and personal, into eight equal portions, and to pay over and transfer one of them to each of his eight children at a certain time, to whom (each of his children) testator declares he gives, "devises," and bequeaths the same, to be thereafter held by him, his "heirs" and assigns, forever, in the meantime giving, devising, and bequeathing the same to the executors in trust to pay the income to said children, the executors being empowered to sell any and all the real estate at such times and on such terms as they may deem best, and to mortgage any real estate for the purpose of paying any mortgage thereon becoming due, does not work an equitable conversion; the power to sell being merely discretionary, and exercise of it not being rendered necessary by the will.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Conversion, §§ 38–43.]

Action by Warner W. Westervelt and others, executors of William O'Gorman, deceased, against Mary Catherine Mahony and others. Judgment directed.

A. G. Cropsey, for plaintiffs.
A. L. Martin, Harold Swain, and Jeremiah O'Leary, for defendants.

NEWBURGER, J. This action is brought by the executors of the last will and testament of William O'Gorman for a construction of his will and for an accounting. It appears that William O'Gorman died on June 28, 1903, leaving, him surviving, a widow and eight children. He made a last will and testament during the year 1899, in which he, after providing for the payment of the debts and funeral expenses and bequeathing to his widow his personal goods and chattels, gave, devised, and bequeathed unto the executors thereinafter named all the rest, residue, and remainder of the estate, real and personal—

"To have and to hold the same in trust, however, for and during the natural life of my said wife, Julia O'Gorman, for the following uses and purposes, namely: To invest and keep invested all moneys belonging to my estate not required for immediate use in the care and management of my real estate, so that the same shall produce an income, and to pay over the net income of such investment, together with the net income of my real estate, to my said wife, Julia O'Gorman, for her own use, care, support, and maintenance.

"Fourth. Upon the death of my said wife, Julia O'Gorman, I direct my said executors, or the survivors or survivor of them, to divide the residue and remainder of my estate, real and personal, including investments, into eight equal portions or shares. ＊ ＊ ＊ One of such equal portions or shares I direct my said executors to pay over and transfer to my son, Maurice J. O'Gorman, when he shall arrive at the age of twenty-one years, to whom I give, devise, and bequeath the same, to be thereafter held by him, my said son, his heirs and assigns, forever; and until my said son shall arrive at the age of twenty-one years I give, devise, and bequeath such portion or share to my said executors, in trust, to pay over the net annual income thereof to my said son, Maurice J. O'Gorman, for his own use, support, and maintenance. ＊ ＊ ＊

"Fifth. I hereby authorize and empower my executors and executrix, here-

inafter named, and the survivors and survivor of them, to grant, bargain, sell, assign, convey, transfer, and set over any and all of my real estate at such time or times and upon such terms as they shall deem best for the purpose of carrying into effect the provisions of this my will, and to sign, seal, execute, and deliver any and all necessary deeds, conveyances, leases, assignments, and other instruments in writing therefor. And I hereby further authorize and empower my said executrix and executors, the survivors and survivor of them, in case any mortgage, which may be an existing lien upon real property belonging to my estate, shall be called in and payment thereof demanded, to remortgage such piece of real property, for the purpose of paying off and discharging such mortgage, and the expense attending the same, and to sign, seal, execute, and deliver all necessary and required bonds and mortgages therefor."

He further, in his will, made the same provision for the other seven children that he made for his son Maurice, J., as is contained in the fourth clause, with the exception that, in the cases of several of the married daughters, he provided a life tenancy in said daughters while their husbands are alive and the remainder to their children. All of the eight children, except his daughter Julia A., are now in a position to receive their distributive share of the residuary estate; the husbands of two of the daughters for whose lives the trust was intended having died before the testator's widow.

The question submitted by the executors is: Was an equitable conversion effected by the will, and is the real estate in the hands of the executors and trustees to be treated as personal property? In Phœnix v. Trustees of Columbia College, 87 App. Div. 438, 87 N. Y. Supp. 897, it was held:

"An intention on the part of a testator that his real estate shall be convert. ed into personalty must, in order to be operative, appear plainly, distinctly, and unequivocally. Such intention may be manifested: First, by a positive direction to the executors or trustees to make the conversion; second, the intention may be ascertained from the necessity of a sale in order to carry out the general scheme of the testator; third, the property may be deemed to be equitably converted when the purpose of the testator would fail without such conversion."

In Scholle v. Scholle, 113 N. Y. 270, 21 N. E. 84, it was held:

"A power or authority to sell is given, but, unless the exercise of that power is rendered necessary and essential by the scope of the will and its declared purposes, the authority is to be deemed discretionary, to be exercised or not, as the judgment of the executrix may dictate, and so an equitable conversion will not be decreed; and where the power of sale is given without explicit and imperative direction for its exercise, and the intention of the testator in the disposition of his estate can be carried out, although no conversion is adjudged, the land will pass as such, and not be changed into personalty." Chamberlain v. Taylor, 105 N. Y. 194, 11 N. E. 625.

See, also, Matter of Tienken, 131 N. Y. 400, 30 N. E. 109; Matter of Tatum, 169 N. Y. 514, 62 N. E. 580.

It is apparent, in view of these decisions and from a reading of the will, that it was the intention of the testator to vest the whole of his estate in his eight children living at his death, but postponing the possession and enjoyment of the real estate during the life of the wife, so as to secure for her an annual income for her support. No equitable conversion was either intended or effected by the provisions of the will. The direction to the executors to divide the residue and re-

mainder of the estate, real and personal, and not a division of the proceeds derived from a sale of real property, clearly expresses the intention of the testator. The whole scheme and language of the will makes it plain that the testator contemplated that his real estate should be preserved and divided by the executors and trustees among his eight children. Judgment should be entered decreeing that no equitable conversion was effected by the will of William O'Gorman, deceased, and that the executors proceed to carry out the directions of the will, and to file their accounts within 30 days; such accounts to be submitted to a referee, if objections are filed thereto.

I have passed upon the findings proposed. Let findings embodying those that I have allowed, and a decree in accordance therewith, be submitted upon notice. As to the question of costs and allowance raised by all the attorneys, that can be passed upon on the entry of the final decree.