(43 App. Div. 129.)

### HUBBARD v. HOUSLEY et al.

(Supreme Court, Appellate Division, First Department. July 18, 1899.)

1. WILLS—TRUSTS—RENTS AND PROFITS.

A will devising all the residue of the estate of testator to her executors in trust to take possession and convert same into money, and to make conveyances thereof, and upon final settlement to divide the net proceeds into equal parts, to be distributed among named legatees, creates an express trust, under 1 Rev. St. p. 728, § 55 (Real Property Law, § 76), vesting title in the executor; and this though section 56 provides that no estate shall vest in the trustee unless the trustee is also empowered to receive the rents and profits, this right being implied from the language of the devise.

2. SAME—RENTS AND PROFITS.

The taking of rents and profits of land devised is a necessary incident of its possession.

3. SAME—IMPLIED RIGHT OF EXECUTOR TO COLLECT.

The right of an executor to take rents and profits is not to be deemed as denied because the will contains no provision for their disposition when collected, the implication being that they are to go to the persons beneficially interested in the estate.

4. PARTITION—AVOIDANCE OF SALE FOR DISCREPANCY.

Purchaser at partition sale took possession of the premises on the day that survey was made, and remained in possession for some time. There was a discrepancy as to size of the lot purchased. The closing of the sale was postponed from time to time at the request of the purchaser. Nearly a month after taking possession, it was agreed that, if no other objection be raised as to the property, the objection as to dimensions would be waived. *Held* that, in the absence of a valid objection, the right to object to the dimensions of the property was waived.

5. SAME—WAIVER—POSSESSION.

A lot containing buildings was sold in partition. The lot, as sold, was not quite of the dimensions mentioned in the description under which it was sold. The buildings on the lot did not encroach on adjoining lots. Pending close of sale, and on the date of survey showing discrepancy, purchaser took possession of property, and continued such occupancy. *Held*, that the objection as to the discrepancy was waived.

Appeal from special term, New York county.

Action by Josephine H. Hubbard against Mary L. Housley and others for partition. From an order requiring the purchaser at the partition sale to complete the purchase, and an order denying his motion to be relieved from it (58 N. Y. Supp. 432), Mitchell A. C. Levy, the purchaser, appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

John Frankenheimer, for appellant.
Henry Schmitt, for respondent Hubbard.
Victor J. Dowling, for other respondents.

RUMSEY, J. The action was brought for the partition of certain property in the city of New York, and judgment was entered directing a sale. Accordingly the referee on the 11th day of January, 1899, sold the premises for the sum of $23,600. It was arranged that the title should be closed and the deed delivered on the 10th of February, 1899. Immediately after the sale the purchaser took possession of the premises and advertised them for sale, and he

continued in possession of the premises until his final refusal to carry the purchase into effect.  The sale was adjourned from time to time until the 20th of February, 1899.  The premises had been surveyed on the 23d of January, and it had then been ascertained that the lot was not quite of the dimensions mentioned in the description in accordance with which it was sold.  This fact seems to have been known to the purchaser at least as soon as the 20th of February, because upon that day, as a condition of procuring an adjournment until the 27th of February, he agreed that, if no other objection be raised, the objection to the dimensions would be waived.  The purchaser did make an objection to the title, because of which he refused to complete his purchase.  Thereupon a motion was made to compel him to do so, which was granted, and from the order granting it this appeal is taken.

The property which was the subject of the action was situated upon Greenwich street, in the city of New York.  The title to the property had been vested in one James H. Noe, who by his will devised it to his children.  One of those children (William Noe), who had become the owner of an undivided fourth of said premises, conveyed it by deed to his mother, Ann L. Noe.  By her will, Mrs. Noe, after other bequests and devises, made the following:

"I give, devise, and bequeath all the rest, residue, and remainder of the property and estate, real and personal, of which I shall die seised or possessed, unto my executors hereinafter named," etc., "in trust to take possession of my residuary estate, and to convert the same, or such part or parts thereof as it may be necessary so to do, into money, by public or private sale," and to make conveyances thereof, and, "upon the final settlement of my estate, to divide the net proceeds of my said residuary estate into four equal parts, and dispose of said parts as follows, viz."

Then follows a direction as to the disposition of the residuary estate, which it is not necessary to consider, further than that one of said parts is by the will given to William Noe.

Mrs. Noe died before her son William.  In this action her executor, James H. Noe, was made a party defendant, but William Noe was not.  The purchaser claims that the devise quoted above from Mrs. Noe's will did not convey any title to the executor, and therefore the undivided fourth of the land of which she was seised descended at her death to her four children, and that William Noe, one of those children, was the owner in fee of an undivided fourth part of Mrs. Ann Noe's interest, being one-sixteenth of the whole premises, and that he, as such owner in fee, should have been made a party defendant in the action.  Because he was not so made a party defendant, the purchaser claims that the title is defective.  The single question is whether the clause of Mrs. Noe's will which is quoted above operated to vest the title to her undivided fourth of the premises in her executor, because, if it did, it was not necessary to make any other person a party to the action, in respect of that portion.

The land was given to the executor in trust to convert it into money, and to divide it among certain legatees.  This trust is one which is permitted by the second subdivision of section 55 of the Revised Statutes, which authorizes the creation of an express trust to sell lands for the benefit of legatees.  1 Rev. St. p. 728, § 55 (Real

Property Law, § 76). The appellant, admitting that the trust is one which is authorized by the statute above quoted, insists, nevertheless, that in this instance the title did not pass to the executor, because of the subsequent section of the statute, which provides that a devise of lands to executors or other trustees, to be sold or mortgaged, where the trustees are not also empowered to receive the rents and profits, shall vest no estate in the trustees, but the trust shall be valid as a power, and the lands shall descend to the heirs or pass to the devisees subject to the execution of the power. 1 Rev. St. p. 729, § 56 (Real Property Law, § 77). The claim is that the will does not give to the executor the rents and profits of the land, nor does it make any disposition of the rents and profits in his hand if he shall take them, and therefore it cannot be assumed that he was to be empowered to receive them.

In considering this question it is to be noticed, in the first place, that to constitute a valid express trust, or to authorize the receipt by the executors of the rents and profits, it is not necessary that the purpose shall be stated in the precise words of the statute, or that the power to receive the rents and profits should be given to him in so many words. It is sufficient if there is to be implied from the whole devise, taken together, an intention that the executor shall receive the rents and profits, and, therefore, that the trust shall be created. Morse v. Morse, 85 N. Y. 53. This will, in express terms, authorizes the executor to take possession of the land. By the terms of it, he alone was entitled to go into possession of Mrs. Noe's interest in that property. None of the heirs had any right to interfere with it. The taking of the rents and profits of land is a necessary incident of its possession. Whenever the power is given to one to take possession, everything that goes with the possession necessarily follows it. One of these things is not only the control of the premises, but the right to take whatever comes from them. The possession gives the exclusive dominion over the land, and the one to whom the possession is given takes necessarily with it a vested right of enjoyment in the land, and everything that grows out of it. At common law, originally, the only way in which an estate in freehold could have been created was by taking the purchaser to the land, putting him in physical possession of it, or giving him a clod of the earth in token of that possession (4 Kent, Comm. 448; Leake, Real Prop. 46); and when he had possession he had the full seisin, and an absolute right of enjoyment in the fullest extent. So, when this will gave to the executor the right to take possession of the premises, it gave to him, as a part of that possession, the right to the rents and profits of the land. Lent v. Howard, 89 N. Y. 176; Frantz v. Ireland, 66 Barb. 387; Leake, Real Prop. p. 46.

But it is said that the right to take the rents and profits in this case did not exist, because there was no disposition of them after they reached the hands of the executor; and it is insisted that authority to the executor to take the rents and profits of land, where he is not called upon to make any disposition of them, will not vest him with title to the premises, because no trust is created thereby. This proposition of the appellant is answered by the opinion of the

court of appeals in the case of Morse v. Morse, 85 N. Y. 53. In that case the will authorized and empowered the executor to sell and convey by deed "any and all my real estate  *  *  *  at such time and in such manner as he shall think proper, and to rent and lease the same until sold." It was claimed that under that provision of the will the executor did not take title, because the rents and profits were not given to him in terms, and because, also, there was no direction to pay them over if he received them, and for that reason no express trust was created, under the statute. But the court held, in an action for partition, that the will created a valid express trust in the executor, and that no estate vested in the children; that the power to lease carried with it the power to receive the rents, and, although there was no express direction as to the disposition to be made of them, the reasonable implication was that they were to go to the persons beneficially interested in the estate. That action was for partition, but the executor was not made a party; and the court held that, because he was not made a party, partition could not be had. The case is controlling in the one at bar, not only as to the disposition of the rents after they had been received by the executor, but upon the question as to whether or not the executor took title.

. We have examined the cases cited by the appellant in support of his contention. In Noonan v. Brennemann, 54 Super. Ct. 337, there was nothing in the will which gave to the executors any more than a power of sale, and there was no attempt by it to take the title away from the heirs until that power of sale was exercised. In the case of Cooke v. Platt, 98 N. Y. 35, the trust was to sell in the discretion of the executors, or to divide the estate between certain children; and it was held that the trust was not one authorized by the statute, because there can be no trust to sell lands for the benefit of legatees unless the direction to sell is absolute. For that reason the court held that no title passed to the executors. We have examined the other cases, and we do not find that they bear upon the question involved.

In our opinion, the appellant is not in a situation to raise here the objection that the lot sold to him does not correspond to the description. It seems that the survey was procured to be made on the 23d of January, 1899; that the purchaser went into possession at that time, and remained in possession for some time,—just how long does not appear. The closing of the sale was postponed from time to time at the request of the purchaser. Finally, on the 20th of February, at the time of the postponement, and, it is to be assumed, as a condition of it, it was agreed by the purchaser that, if no other objections be raised as to the property, the objection as to the dimensions would be waived. The "other objections" spoken of there must mean other valid objections. If it were otherwise construed, it would be of no effect, because the purchaser might put himself in a situation to raise an objection to the dimensions by insisting upon any other grounds, to relieve him from taking the title, however frivolous they might be, and whether they existed or not. So, unless he was able to raise some other valid objection, he is not in a situa-

tion now to raise the objection to the dimensions of the property. But, even were that not so, we think that the objection to taking the title on the ground of the discrepancy in the measurements should not be sustained. It is not fairly to be inferred from what has been made to appear that the building upon this lot encroaches upon any other land, although there is a discrepancy in the measurements, and for that reason we think that the appellant properly waived the supposed objection.

Upon the whole case, we think the order should be affirmed, with $10 costs and disbursements. All concur.